**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Esequiel Gonzalez Sanchez, | ) | No. CV 10-2013-PHX-JAT |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Michael J. Astrue, Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

Pending before the Court is Plaintiff's appeal from the Administrative Law Judge's ("ALJ") denial of Plaintiff's application for Social Security disability benefits. For the reasons that follow, the Court reverses the ALJ's decision to deny Social Security disability benefits and remands for further consideration.

**I.     PROCEDURAL HISTORY**

In December 2007, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. Record Transcript ("TR") 111-13. Plaintiff alleged disability beginning October 11, 2004. TR 111-13. Plaintiff's claim was denied on May 22, 2008. TR 54-58. Upon reconsideration, Plaintiff's claim was again denied on October 6, 2008. TR 61-63. On November 3, 2008, Plaintiff filed a written request for a hearing. TR 64-65. On November 10, 2009, Plaintiff appeared and testified at a hearing before the ALJ. TR 25-49.

1    In a decision signed and dated January 22, 2010, the ALJ determined that Plaintiff was not

2    disabled under sections 216(i) and 223(d) of the Social Security Act from October 11, 2004

3    through December 31, 2009, Plaintiff's last date insured. TR 24. On August 12, 2010, the

4    Appeals Counsel denied Plaintiff's request for a review of the hearing decision. TR 1-3.

5         Pending before the Court is Plaintiff's appeal filed on September 20, 2010, pursuant

6    to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision. (Doc. # 1.)

7 **II.      FACTUAL BACKGROUND**

8       **A.      Plaintiff's Disability Claim**

9        Plaintiff has allegedly not performed substantial gainful activity since October 11,

10    2004. TR 33. Plaintiff alleges that he is disabled and unable to work due to a back injury,

11    high cholesterol, and diabetes. TR 122. He further alleges that he is unable to bend at the

12    waist, to sit, stand, walk, or lay down for extended periods of time. TR 122. Plaintiff reports

13    parasthesia in his left leg and foot. TR 173-75. He claims that he is unable to put on his

14    shoes and socks and incapable of washing himself below his knees. TR 134. Plaintiff also

15    alleges that he is unable to lift more than 20 pounds, squat, kneel, or bend. TR 138. He

16    claims that his pain is usually at a six on a scale of one to ten, and that he has great difficulty

17    sleeping due to the pain. TR 39-41.

18       **B.      Plaintiff's Background**

19        On November 10, 2009, Plaintiff testified to the ALJ regarding his alleged disabling

20    conditions. TR 25-49. Plaintiff, Esequiel Gonzalez Sanchez, lives at 4031 North 80th

21    Avenue, Phoenix, Arizona 85033. TR 29. Plaintiff was born in Guadalajra, Mexico on

22    November 2, 1968, and came to the United States in 1987. TR 29. Plaintiff completed the

23    sixth grade in Mexico. TR 29. Plaintiff reads and writes in Spanish, but not in English. TR

24    30. In fact, Plaintiff speaks very little English. TR 30. Plaintiff worked at a dairy between

25    1992 and 2002, where Plaintiff fed and milked cows, and carried bags of alfalfa. TR 30.

26    While employed at the dairy, Plaintiff carried bags weighing up to 120 pounds. TR 31.

27    Plaintiff also worked at a warehouse for a *Target* store loading boxes onto trucks, where he

28    lifted loads of up to 80 pounds. TR 31. During his employment at *Target*, Plaintiff injured

his back and left leg/foot, and filed a workers' compensation benefits claim. TR 32. At the time of the hearing before the ALJ, Plaintiff was receiving $575 of workers' compensation benefits ($525 after attorney's fees). TR 33.

As noted above, Plaintiff has not worked since October 11, 2004. TR 33. Plaintiff lives in a one-story house with his wife and children, including children under the age of 18. TR 33.

Plaintiff testified that he has had two surgeries performed on his back, one in 2003 and another in 2006. TR 34. Dr. Louis Rappoport has been treating his back problems for several years, and provided Plaintiff with prescriptions for various medications. TR 34.

Plaintiff testified that before his second operation, he could not sit down or stand up for ten minutes at a time, and that he suffered from excruciating pain in his back and legs, if he stood or sat for long period of time. TR 34. Plaintiff testified that after his second surgery, he used a walker for about three and one-half months to help him get around. TR 35. According to Plaintiff, his impairments did not improve after his second surgery. TR 35. However, Plaintiff did experience some improvement in that he was able to sit down and stand up a little longer than he had been able to before surgery. TR 36. Plaintiff also testified that he went to physical therapy. TR 36.

Plaintiff testified that he was seeing Dr. DeCastro in 2007 about his diabetes, and that his diabetes "was very high." TR 36. According to Plaintiff, his cholesterol caused him to get sicker and have more illnesses. TR 36. His diabetes makes him feel sleepy and very weak. TR 37.

Plaintiff testified that he saw a podiatrist, David Corcoran, D.P.M., regarding problems with his foot falling asleep. TR 37. Plaintiff stated that Dr. Corcoran put a brace on Plaintiff's left leg. TR 37. The brace helped to keep Plaintiff from stumbling, but at times, Plaintiff could not lift his foot. TR 37.

At the time of the hearing before the ALJ, Plaintiff testified that he continued to have back and leg pain and that his leg continued to fall asleep. TR 38. Plaintiff testified that on a scale of one to ten, his pain is a three at the least, an eight at the worst, and a six on

average.  TR 39.  Walking for about fifteen minutes would cause him to feel pain at a level

of eight.  TR 39.  Plaintiff could sit for about 45 minutes to an hour before his back would

hurt and his foot would fall asleep.  TR 39.  Sitting for more than 45 minutes caused Plaintiff

pain at level eight, and he would walk or lie down to relieve the pain.  TR 40.

Plaintiff testified that he has trouble sleeping.  TR 41.  He sometimes washes the

dishes and vacuums in fifteen minute increments.  TR 41-42.  Plaintiff watches TV during

the day, walks, and lies down.  TR 41-42.  Plaintiff also testified that his medications make

him sleepy.  TR 43.

### C.    Physical Impairments and Medical Treatment

In April 2003, Plaintiff underwent a laminotomy/microdiskectomy L5-S1, left side,

with decompression of the left S1 nerve root.  TR 392.  In January 2004, Plaintiff saw Dr.

Rappoport for his eight month post-operation visit.  TR 342.  Plaintiff reported pain radiating

down his left lower extremities.  TR 342.  Dr. Rappoport noted significant disc degeneration

at L5-S1,  which Dr. Rappoport believed was likely the cause of Plaintiff's lower back pain.

TR 342.  Dr. Rappoport noted that Plaintiff's epidural steroid injections were not helping,

and he concluded that Plaintiff had failed to make any significant progress with conservative

management.  TR 342.  As such, Dr. Rappoport recommended further diagnostic testing for

possible further surgical intervention.  TR 342.

In December 2003 and January 2004, at Dr. Rappoport's recommendation, Plaintiff

received post-operative epidural steroid injections.  TR 404.  Plaintiff continued to complain

of pain and parasthesia.  In August 2005, Dr. Rappoport viewed an MRI taken on July 26,

2005, and observed evidence of a recurrent disc herniation in Plaintiff's L5-S1, resulting in

compression of the left S1 nerve root.  TR 321.  Dr. Rappoport also noted degenerative disc

disease at the L5-S1 level.  TR 321, 323.

In April 2006, Dr. Terry McLean conducted a one-time examination of Plaintiff  as

a non-treating workers' compensation carrier medical examiner.  TR 401-06.  Dr. McLean

noted tenderness and limited range of motion.  Dr. McLean also noted a positive straight leg

raise test on Plaintiff's left leg.  Dr. McLean did not see any signs or symptoms that would

suggest symptom embellishment, and his impressions included failed back surgery syndrome, recurrent disc herniation at L5-S1 with compression of nerve root, chronic axial low back pain, and residuals of left S1 radiculopathy. TR 401-06.

On September 8, 2006, lateral radiographs of the lumbar spine were taken. TR 315. Dr. Rappoport noted that Plaintiff had some disc space narrowing present at the L5-S1 level. TR 315. Dr. Rappoport also noted that there may have been a mild increase in the disc space narrowing at the L5-S1 level when compared with radiographs from March 2003. TR 315.

On September 11, 2006, Plaintiff underwent a second back surgery. TR 380. Dr. Rappoport was the surgeon. Dr. Rappoport performed a revision laminotomy/ microdiskectomy, L5-S1 level, left side with decompression of left S1 nerve root, a bilateral fusion L5-S1, and a right posterior iliac crest bone marrow aspiration. TR 380. Postoperative diagnoses were recurrent lower back pain with associated symptomatology, recurrent disc herniation of L5-S1 nerve root compression and degenerative disc disease at L5-S1 level. TR 380.

In March 2007, Plaintiff returned to Dr. Rappoport for post-operative evaluation. TR 295. Plaintiff reported attending physical therapy approximately thirteen times. TR 295. Dr. Rappoport noted that Plaintiff still had symptoms in his left leg, including swelling and weakness after nearly ten minutes of walking. TR 295. Plaintiff stated that he was somewhat better than he was prior to the surgery. TR 295.

In August 2007, a post-myelogram CT scan of Plaintiff's lumbar was performed. TR 286. The results showed no evidence of significant spinal stenosis, but the scan did show dome annular disc bulging at L4-L5 without neural impingement. TR 286. In October 2007, Dr. Rappoport reviewed the CT scan, and reported that Plaintiff's nerve roots were satisfactorily filled, that his fusion was intact, and that there was mild ligamentum flavum hypertrophy without spinal stenosis. TR 286. Dr. Rappoport commented that there was no explanation for Plaintiff's ongoing left leg complaints. TR 286. However, Dr. Rappoport also mentioned that there could be chronic nerve dysfunction. TR 286.

In November 2007, Plaintiff underwent nerve conduction studies which evidenced active chronic L5-S1 radiculopathy. TR 397.

In April 2008, Plaintiff attended an internal medicine consultative evaluation with Keith Cunningham, M.D. TR 433-38. Dr. Cunningham physically examined Plaintiff and observed Plaintiff's physical capacities. TR 433-38. Dr. Cunningham noted that Plaintiff was able to dress, undress, mount and dismount the exam table, to stand on his heels, and to squat. TR 433-38. Plaintiff was not able to stand on the toes of his left foot, and he had limited range of motion of the lumbar spine. TR 433-38. Laying straight leg raising tests were positive, but sitting straight leg raising tests were negative. TR 433-38. Plaintiff demonstrated mild neurological atrophy of the left quadriceps, and decreased sensation in the left L5 distribution. TR 433-38. Dr. Cunningham also assessed "persistent left L5 sensory radiculopathy." TR 433-38.

Plaintiff was seen by Dr. Rappoport again in May 2008, and complained of continuing left leg symptomatology. TR 465-66. Dr. Rappoport measured Plaintiff's thighs and found no difference in the circumference of the thighs. TR 465. Dr. Rappoport concluded that there was no atrophy in Plaintiff's thigh. TR 465-66. Plaintiff was seen again in January and April 2009, complaining of worsening symptoms. TR 486, 488. Dr. Rappoport suggested injections and an S1 nerve block, but Plaintiff declined the treatment. TR 486, 488.

In 2008, Plaintiff was diagnosed with drop foot by Dr. Corcoran. TR 499. By March 2009, Plaintiff indicated improved functioning of the left foot and leg after months of wearing an ankle-foot orthosis. TR 495.

In September 2009, Dr. Rappoport opined that Plaintiff was unable to sit for more than 45 minutes at a time, and more than four hours in an eight-hour workday; that Plaintiff was unable to stand for more than one hour at a time, and more than four hours in an eight-hour workday; that Plaintiff was unable to walk more than fifteen minutes at a time and more than one hour in an eight-hour workday; and that Plaintiff can continuously lift up to five pounds, frequently lift between six and ten pounds, occasionally lift between 11 and 20 pounds, but that he should never lift more than 20 pounds. TR 525-27. Dr. Rappoport

1    further opined that Plaintiff must not bend, squat, or reach more than occasionally, and that

2    Plaintiff is likely to be absent from work more than three days per month due to "bad days."

3    TR 525-27.

4    **D.      Vocational Expert**

5    During the hearing on November 10, 2009, a Vocational Expert ("VE") testified

6    regarding Plaintiff's past work history and potential for future employment. TR 43-49. The

7    VE described Plaintiff's warehouse work as "medium, unskilled work with an SVP:2." TR

8    44. The VE further testified that Plaintiff's past work on the dairy farm is classified as

9    "heavy, semiskilled work with an SVP:4." TR 44.

10   The ALJ's first hypothetical described a person who could not lift more than twenty

11   pounds; could not repetitively bend, stoop, or squat; and could not sit or stand longer than

12   one hour at a time. TR 44. The VE testified that there would be some unskilled jobs that

13   would fit that profile, including parking lot cashier, paramutual ticket seller, and information

14   clerk. TR 45. The VE testified that, based on his labor market survey research, each of these

15   jobs do give sit/stand options. TR 47.

16   In his second hypothetical, the ALJ asked about an individual of the same age,

17   education, and job experience as Plaintiff, who could sit up to 45 minutes, stand for one hour

18   at a time, walk up to 15 minutes at a time, sit up to four hours in an eight-hour day, and lift

19   up to 20 pounds. TR 46. The VE testified that the three jobs previously described would fit

20   that profile. TR 46.

21   Plaintiff's attorney asked the VE if a person who only spoke Spanish could still

22   perform the three positions suggested by the VE. TR 46. The VE testified that none of those

23   jobs would be available in the local economy for a Spanish speaker. TR 46.

24   Plaintiff's attorney also asked the VE if the three jobs would be available to a

25   hypothetical person who would need to miss two or more days of work per month due to

26   medical problems. TR 47. The VE testified that such a person would likely be terminated

27   from any of the three jobs mentioned, and that generally missing work two days per month

28   is the maximum allowable. TR 47.

1 **III.    THE ALJ'S DECISION**

2          The ALJ evaluated Plaintiff's alleged disability according to the five-step evaluation

3 process set forth in 20 C.F.R. § 416.920. TR 10-24.  As an initial matter, the ALJ determined

4 that Plaintiff has not engaged in substantial gainful activity since the alleged onset of his

5 disability.  TR 18.  Next, the ALJ found Plaintiff suffered from a severe impairment: failed

6 back syndrome, status-post multiple surgeries at L5-S1.   TR 18.   However, the ALJ

7 concluded that Plaintiff's impairments failed to meet the criteria of the third step.  TR 19.

8 This step requires that a claimant's impairment or combination of impairments "meets or

9 equals one of the SSA's listings in appendix 1 to subpart P of part 404 of this chapter and

10 meets the duration requirement."  20 C.F.R. § 416.920(a)(4)(iii).   The ALJ found that

11 "through the date last insured, the claimant did not have an impairment or combination of

12 impairments that met or medically equaled one of the listed impairments." TR 19.  The ALJ

13 stated that there was "insufficient evidence of nerve root compromise with associated

14 neurological deficits and/or the requisite functional loss."  TR 19.

15          The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

16 the full range of unskilled sedentary work.  TR 19-23.  The RFC is defined as "the most

17 [Plaintiff] can still do despite [his] limitations."   20 C.F.R. § 416.945(a)(1).   Before

18 determining the RFC, the ALJ dismissed Plaintiff's testimony regarding the intensity,

19 persistence, and limiting effects of his symptoms as not credible in light of the objective

20 medical findings and other record evidence.  TR 20-21.  The ALJ found that "taken as a

21 whole, the objective medical evidence supports a finding that the claimant's impairments and

22 impairment-related pain is not so severe and frequent as to preclude sedentary work."  TR

23 20.

24          The ALJ gave some weight to the opinions of Dr. Rappoport, the treating orthopedic

25 surgeon, but found oddities in his assessments that lessened his credibility.  TR 22-23.  The

26 ALJ also found Dr. Rappoport's opinions to be conclusory and lacking in medical evidence

27 and support.  TR 22-23.  The ALJ gave little weight to the opinions of the Dr. Cunningham,

28

1  because the medical evidence suggested that Plaintiff was more limited in his exertional

2  abilities than Dr. Cunningham opined.  TR 22.

3       At step four, the ALJ found that Plaintiff was unable to perform any of his past

4  relevant work.  TR 23-24.  At step five, according to the ALJ, Medical-Vocational rule

5  201.23 directed a finding of "not disabled" based on an RFC for the full range of sedentary

6  work, and considering Plaintiff's age, education, and work experience. TR 24.  Accordingly,

7  the ALJ held that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social

8  Security Act.  TR 24.

9  **IV.    STANDARD OF REVIEW**

10      A district court

11      may set aside a denial of disability benefits only if it is not supported
        by substantial evidence or if it is based on legal error.  Substantial
12      evidence means more than a mere scintilla but less than a
        preponderance.  Substantial evidence is relevant evidence which,
13      considering the record as a whole, a reasonable person might accept as
        adequate to support a conclusion. Where the evidence is susceptible to
14      more than one rational interpretation, one of which supports the ALJ's
        decision, the ALJ's decision must be upheld.
15

16  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation

17  omitted).

18      This standard of review exists, because "[t]he trier of fact and not the reviewing court

19  must resolve conflicts in the evidence, and if the evidence can support either outcome, the

20  court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d

21  1016, 1019 (9th Cir. 1992).  Also under this standard, the Court will uphold the ALJ's

22  findings "if supported by inferences reasonably drawn from the record." *Batson v. Soc. Sec.

23  Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  However, the Court must consider the entire

24  record as a whole and "may not affirm simply by isolating a 'specific quantum of supporting

25  evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbings v. Soc. Sec.

26  Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

27  *//*

28

# V.    LEGAL STANDARD

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that he is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). A person is "under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (describing the sequential process). A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1.    First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2.    If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities means the "abilities and aptitudes to do most jobs," for example: (1) walking; standing, lifting, carrying, and reaching; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervisors, co-workers and usual work situations; and (6) dealing with changes in routine. *Id.* § 404.1521(b). Further, the impairment must either be expected "to

1 result in death" or "to last for a continuous period of twelve months." *Id.* § 404.1509

2 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de

3 minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273,

4 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, the claimant is not

5 disabled.

6       3.     Having found a severe impairment, the ALJ next determines whether the

7 impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. §

8 404.1520(a)(4)(iii). If so, the claimant is found disabled without considering the claimant's

9 age, education, and work experience. *Id.* § 404.1520(d). If the impairment or impairments

10 do not meet or equal a listed impairment, before proceeding to the next step, the ALJ will

11 make a finding regarding the claimant's "residual functional capacity based on all the

12 relevant medical and other evidence in [the] record." *Id.* § 404.1520(e). A claimant's

13 "residual functional capacity" is the most he can do despite all his impairments, including

14 those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1-2).

15       4.     At step four, the ALJ determines whether, despite the impairments, the

16 claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this

17 determination, the ALJ compares its "residual functional capacity assessment . . . with the

18 physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If

19 the claimant can still perform the kind of work he previously did, the claimant is not

20 disabled. Otherwise, the ALJ proceeds to the final step.

21       5.     At the final step, the ALJ determines whether the claimant "can make an

22 adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In

23 making this determination, the ALJ considers the claimant's residual functional capacity,

24 together with vocational factors (age, education, and work experience). *Id.* § 404.1520(g)(1).

25 If the claimant can make an adjustment to other work, then he is not disabled. If the claimant

26 cannot perform other work, he will be found disabled. As previously noted, the ALJ has the

27 burden of proving the claimant can perform other substantial gainful work that exists in the

28 national economy. *Reddick*, 157 F.3d at 721.

1 **VI.   ANALYSIS**

2      On appeal, Plaintiff argues that the ALJ's denial of disability benefits is not supported

3 by substantial evidence and  is based on legal error.   Specifically, Plaintiff alleges the

4 following failures or deficiencies in the ALJ's decision:

5      1.  The ALJ committed legal error in rejecting Dr. Rappoport's opinions without

6 providing legally sufficient reasons.

7      2.  Substantial evidence does not support the ALJ's step three determination that

8 Plaintiff did not have impairments that met or equaled Listing 1.04, 20 C.F.R. Part 404,

9 Subpart P, Appendix 2.

10      3.  The ALJ erred in relying on the grids at step five to deny Plaintiff's claim.

11      4.  The ALJ committed legal error in rejecting of Plaintiff's credibility without

12 substantial evidence for doing so.

13      5. The ALJ's conclusion that Plaintiff's diabetes was not a severe impairment at step

14 two is not supported by substantial evidence.

15      The Court will review this appeal based on the entire record before it, including the

16 ALJ's current decision, TR 16-24, and apply the applicable legal standards.

17      **1.      The ALJ's Rejection of the Treating Physician's Opinions**

18      Plaintiff argues that the ALJ rejected Dr. Rappoport's opinions without legally

19 sufficient reasons. (Doc. # 17 at pp. 14-17.)  The opinions of treating physicians are given

20 greater weight than those of non-treating physicians. *Turner v. Comm'r of Soc. Sec.*, 613

21 F.3d 1217, 1222 (9th Cir. 2010).  "Where a treating physician's opinion is not contradicted

22 by another doctor, it may be rejected only for clear and convincing reasons." *Thomas v.*

23 *Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).   However, where there is conflicting

24 medical evidence, the ALJ need only state "specific and legitimate reasons that are supported

25 by substantial evidence" in the record for rejecting a treating physician's opinion. *Ryan v.*

26 *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  When a physician's opinion is

27 conclusory, in the form of a checklist, and not supported by objective evidence, the opinion

28

1  is entitled only to minimal weight. *Batson v. Comm'r*, 359 F.3d 1190, 1194-955 (9th Cir.

2  2004).

3      In his decision, the ALJ declined to give controlling weight to Dr. Rappoport's

4  opinions.  Although Dr. Rappoport was Plaintiff's treating physician, the ALJ provided

5  several reasons for giving minimal weight to some Dr. Rappoport's opinions.  Specifically,

6  the ALJ noted that many of Dr. Rappoport's opinions were "quite conclusory, providing very

7  little explanation of the evidence relied on in forming" them.  TR 19.  Elsewhere in his

8  decision, the ALJ stated that he found "no basis" for some of Dr. Rappoport's conclusions.

9  TR 23.  The ALJ further noted that Dr. Rappoport's opinions and findings were often made

10 without any physical examination or objective clinical findings.  TR 23.  In fact, the ALJ

11 noted that Dr. Rappoport provided his opinion with regard to Plaintiff's RFC several times

12 in 2008 and 2009, even though Dr. Rappoport had not performed any detailed examination

13 or made any clinical findings since 2007.  TR 23.  Additionally, several of Dr. Rappoport's

14 opinions that Plaintiff cites to were conclusory, checklist-opinions offered in response to

15 solicitations from Plaintiff's counsel and not made in conjunction with any examination or

16 clinical findings.  TR 525-27.  As such, these opinions are entitled only to minimal weight.

17 *Batson v. Comm'r*, 359 F.3d 1190, 1194-955 (9th Cir. 2004).

18     The ALJ further commented that besides being unfounded and conclusory, Dr.

19 Rappoport's "progress notes do not support his findings."  TR 23.  The Court agrees that Dr.

20 Rappoport's opinions are sometimes contradicted by his own progress notes and his clinical

21 findings.  For example, in December 2006, Dr. Rappoport commented that Plaintiff's "left

22 leg pain is pretty much resolved" and that "he is getting better."  Elsewhere, as late as 2009,

23 Dr. Rappoport opined that Plaintiff's symptoms were worsening and that Plaintiff's

24 impairments were so severe that they equaled those listed in 1.04 A, B, and C of 20 C.F.R.

25 404, Subpart P, Appendix 1. TR19.  Dr. Rappoport's opinions are also contradicted by the

26 opinions of other physicians, including Dr. Keith Cunningham, who opined that Plaintiff's

27

28

1  impairments were markedly less debilitating than Dr. Rappoport concluded in his

2  evaluations.  TR 433-38.[1]

3      In light of contradictions in the record and contradictions by other physicians, the ALJ

4  must state "specific and legitimate reasons that are supported by substantial evidence" in the

5  record for rejecting Dr. Rappoport's opinions. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194,

6  1198 (9th Cir. 2008).  The ALJ provided specific and legitimate reasons for giving minimal

7  weight to many of Dr. Rappoport's conclusions, and did not err in giving them less than

8  controlling weight.

9      **2.    The ALJ's Determination that Plaintiff Did Not Suffer from Impairments**

10  **that Meet or Equal Listing 1.04 A, B, or C.**

11      Plaintiff argues that the ALJ erred in finding that none of Plaintiff's impairments,

12  individually or in combination, met or equaled the criteria for presumptive disability listed

13  in the Social Security regulations.  (Doc. # 17 at pp.17-19.)  According to Plaintiff, the

14  medical evidence and physician testimony show that his impairments meet or equal Listing

15  1.04(A) for a period greater than 12 months.  (Doc. # 17 at pp. 17-19.)

16      Listing 1.04 impairments are those that result in the compromise of the nerve root or

17  spinal cord.  20 C.F.R. pt. 404, subpt. P, App. 1, § 1.04.  Such impairments include herniated

18  nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc

19  disease, facet arthritis, vertebral fracture, and other similar impairment. *Id.*  To meet Listing

20  1.04(A), the impairment(s) must manifest the following symptoms:

21      Evidence of nerve root compression characterized by neuro-anatomic
      distribution of pain, limitation of motion of the spine, and motor loss (atrophy
22      with associated muscle weakness or muscle weakness) accompanied by
      sensory or reflex loss and, if there is involvement of the lower back, positive
23      straight-leg raising test (sitting and supine)[.]

24  *Id.* § 1.04(A).

25

26

27      [1] The ALJ afforded little weight to Dr. Cunningham's opinions, but Dr. Rappoport's
28  testimony is, nonetheless, contradicted.

- 14 -

1    In this case, the ALJ held that Plaintiff does not have impairments equal in severity

2    to Listing 1.04(A) because there was "insufficient evidence of nerve root compromise with

3    associated neurological deficits and/or the requisite functional loss" to satisfy the requisites

4    of Listing 1.04. TR 19. Radiculopathy is a disease of the spinal nerve roots. *See* The Free

5    Dictionary, http://medical-dictionary.thefreedictionary.com/radiculopathy (last visited July

6    22, 2011). It is "a condition due to a compressed nerve in the spine that can cause pain,

7    numbness, tingling, or weakness along the course of the nerve." *See* MedicineNet.com,

8    http://www.medicinenet.com/radiculopathy/page2.htm (last visited July 22, 2011). At least

9    three different doctors opined that Plaintiff suffered from radiculopathy. Dr. Rappoport, an

10   orthopedic spinal specialist and Plaintiff's treating physician, diagnosed Plaintiff with

11   radiculopathy. TR 392. Terry E McLean, M.D., an orthopedic spine surgeon at Southwest

12   Spine Center, conducted a one-time examination "as a non-treating workers' compensation

13   carrier medical examiner" and found that Plaintiff suffered from "recurrent disc herniation,

14   left L5-S1, with compressison of left S1 nerve root," and "residuals of left S1 radiculopathy."

15   TR 401-06.     Additionally, Dr. Cunningham, a doctor approved by the Disability

16   Determination Service to conduct physical examinations, examined Plaintiff and noted in his

17   assessment "persistent left L5 sensory radiculopathy." TR 434. The record also contains a

18   medical report in which Dr. Rappoport made the post-operative diagnosis of herniated-

19   nucleus pulposus, another of the 1.04(A) disorders. TR 392.

20       Not only did several physicians diagnose Plaintiff with radiculopathy, the record

21   shows evidence of neuro-anatomic distribution of pain (TR 291, 302, 316, 324, 326, 342,

22   401-406, 432-434, 465, 530-32, 547 ), sensory loss (TR 256, 291, 302, 326, 328, 432-34,

23   494, 496, 499-501, 535-537, 547), limited range of motion (TR 328, 401-406, 324, 434),

24   atrophy (TR 434), weakness (TR 494, 499-501), and positive straight leg raise tests (TR 291,

25   324, 328, 342, 401-06, 432, 434). The ALJ does not address this evidence, or its significance

26   at step three. The ALJ simply states that "there is insufficient evidence of nerve root

27   compromise with associated neurological deficits." TR 19. The ALJ fails to explain why

28   the findings of radiculopathy do not constitute evidence of nerve root compression and why

1  Plaintiff's radiculopathy, combined with the other evidence in the record described above,

2  does not show that Plaintiff's impairments equal Listing 1.04(A).

3      At step three, when determining whether a claimant's impairments equal a listing, the

4  ALJ must adequately explain his evaluation of record evidence and the combined effects of

5  Plaintiff's impairments. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.1990).  The mere

6  statement that a claimant does not equal the listing is insufficient. *Id*.  The ALJ's failure to

7  provide a sufficient explanation for concluding that Plaintiff's impairments do not equal the

8  criteria of Listing 1.04(A) constitutes legal error. *See id*. (remanding for proper consideration

9  of step three evidence).

10      **3.      The ALJ's Reliance on the Grids, 20 C.F.R. pt. 404, subpt. P, app. 2.**

11      Plaintiff argues that the ALJ erred in relying on the grids at step five to deny

12  Plaintiff's claim. (Doc. #17 at p. 20-22)  The ALJ was guided by the Medical Vocational

13  Guidelines set forth in 20 C.F.R. part 404, subpart P, appendix 2, in making his step five

14  determination.  The grids are an administrative tool the ALJ may rely on when considering

15  claimants with substantially uniform levels of impairment. *Desrosiers v. Sec'y of Health &*

16  *Human Servs.*, 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J. concurring).  The grids may

17  be used, however, "only when the grids accurately and completely describe the claimant's

18  abilities and limitations." *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985).  When a

19  claimant's non-exertional limitations are "sufficiently severe" that they significantly limit the

20  range of work permitted by the claimant's exertional limitations, the grids are inapplicable.

21  *Desrosiers*, 846 F.2d at 577.  Here, the ALJ stated that "as for the claimant's non-exertional

22  limitations, the undersigned has limited the claimant to unskilled work to account for the

23  claimant's impairment-related pain." TR 23.  The ALJ recognized that Plaintiff had non-

24  exertional pain limitations, caused by Plaintiff's impairment, that were sufficient to limit the

25  range of work permitted by Plaintiff's exertional limitations.  As such, the ALJ erred in his

26

27

28

- 16 -

1  reliance on the grids at step five.[2]  Because Plaintiff's non-exertional limitations keep him

2  from fitting squarely into the grid, the VE opinion should have been used at step five.  For

3  this reason, the Court will remand the ALJ's decision in order for the ALJ to consider VE

4  testimony.

5          **4.      ALJ's Determination that Plaintiff's Testimony is not Credible**

6          Plaintiff argues that the ALJ failed to adequately support his finding that Plaintiff's

7  testimony was not credible. (Doc. #17 at p. 22) As Plaintiff noted in his opening brief, the

8  ALJ is responsible for determining credibility. *Andrews v. Shalala*, 52 F.3d 1035, 1039 (9th

9  Cir. 1995).   If the evidence in the record is susceptible to more than one rational

10  interpretation, the Court must uphold the ALJ's determination. *Id*.  Nevertheless, in the

11  absence of positive proof of malingering, an ALJ's refusal to believe a plaintiff's subjective

12  pain testimony must be supported by clear and convincing reasons. *Smolen v. Chater*, 80

13  F.3d 1273, 1284 (9th Cir. 1996).

14          The ALJ found that Plaintiff's statements "concerning the intensity, persistence and

15  limiting effects" of his symptoms were not credible.  TR 20.  Looking at the record as a

16  whole, the ALJ noted that the medical evidence supported Plaintiff's clinical and radiological

17  deficits but "failed to support a finding that claimant is incapable of performing any sustained

18  work activity."  TR 21.  The ALJ further found that the "the course of medical treatment in

19  this case does not bolster claimant's credibility with respect to the degree of pain and other

20  subjective complaints."  TR 21.  The ALJ specifically pointed to evidence in the record that

21  calls Plaintiff's credibility into question.  For example, the ALJ noted that Plaintiff went an

22  entire year, from 2005 to 2006, without seeking any back pain or radiculopathy treatment

23  from Dr. Rappoport.  TR 21.  Additionally, the ALJ noted that Plaintiff failed to avail himself

24  of certain treatments proposed by Dr. Rappoport, including nerve blocks and epidurals.  TR

25

26

27          [2] Curiously, the ALJ did hear testimony from a VE at the hearing, but the ALJ makes

28  no mention of the VE's testimony in his decision.

1 21. The ALJ also found it suspect that Plaintiff suffered for years from intense, debilitating

2 pain, yet never sought any narcotic pain medication stronger than Vicodin. TR 22.

3 Certainly, the ALJ's interpretation of Plaintiff's testimony and the rest of the record

4 is not the only possible interpretation. Nonetheless, the ALJ has listed several specific

5 reasons for doubting the veracity of portions of Plaintiff's subjective pain testimony. The

6 ALJ's reasons are based on evidence in the record, are clearly articulated, and are

7 convincing. The ALJ did not commit legal error in his determination that Plaintiff's

8 subjective statements were not credible.

9 **5.    The ALJ's Determination that Plaintiff's Diabetes Was Not a Severe**

10 **Impairment at Step Two**

11 Plaintiff argues that the ALJ erred in finding that Plaintiff's non-insulin-dependant

12 diabetes was non-severe within the meaning of the Social Security Regulations. (Doc. #17

13 at pp. 24-25) In his decision, the ALJ clearly stated several reasons for his determination.

14 The ALJ noted that Plaintiff was placed on oral medications shortly after being diagnosed

15 with diabetes, and that the brief period of medication caused Plaintiff's diabetes to improve.

16 TR 18. Most importantly, the ALJ stated in his decision that Plaintiff had not alleged any

17 work-related limitations resulting from his diabetes. TR 18. Furthermore, the non-

18 examining state agency physician, S. Suriel, M.D., also opined that Plaintiff's diabetes was

19 non-severe. TR 430. Based on a review of the record, the Court finds that there is

20 substantial evidence to support the ALJ's determination that only some of Plaintiff's reported

21 impairments are severe. *See Matney*, 981 F.2d at 1019. Accordingly, the Court upholds the

22 ALJ's finding that Plaintiff's diabetes was not a severe impairment.

23 **VII.    CONCLUSION**

24 In light of the errors and deficiencies discussed above, the Court will reverse and

25 remand the ALJ's decision for further proceedings. Because the ALJ is in a better position

26 to evaluate the medical evidence, the ALJ should properly consider step three equivalence

27 on remand. If the ALJ finds that Plaintiff's impairment or combination of impairments meets

28 or equals a step three listing, the claimant is presumed to be disabled, and benefits should be

1   awarded. If the ALJ determines that Plaintiff's medical evidence is insufficient to raise a

2   presumption of disability, then he should continue the disability evaluation at steps four and

3   five. Because of Plaintiff's non-exertional limitations, if the ALJ's analysis makes it to step

4   five, then the ALJ must rely on testimony from a vocational expert, who can identify specific

5   jobs within Plaintiff's capabilities, and not upon the grids described in 20 C.F.R. pt. 404,

6   subpt. P, app. 2.

7        For the reasons stated above,

8        **IT IS ORDERED** that the decision of the Administrative Law Judge is **REVERSED**

9   and **REMANDED** for further proceedings consistent with this order.

10       DATED this 25th day of July, 2011.

11

12

13                                 James A. Teilborg
                                   United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28